Boris MOGILEVSKY, Plaintiff,

v.

**BALLY TOTAL FITNESS CORPORATION**
Defendant.

Nos. CIV.A. 01–11240–WGY,
CIV.A. 01–11749–WGY.

United States District Court,
D. Massachusetts.

March 31, 2004.

Harvey S. Shapiro, Law Office Of Harvey S. Shapiro, Boston, MA, for Boris Mogilevsky, Plaintiff.

Brian E. Whiteley, Scibelli & Whiteley, LLP, Boston, MA, for Bally Total Fitness Corp., Defendant.

## MEMORANDUM AND ORDER

YOUNG, Chief Judge.

In these two cases, the plaintiff, Boris Mogilevsky ("Mogilevsky"), sued the defendant, Bally Total Fitness Corporation ("Bally"), for damages arising from Bally's conduct in relation to his employment. In the first suit (the "FLSA Action"), Mogilevsky asserted claims related to the nonpayment of wages under the Fair Labor

Standards Act, 29 U.S.C. §§ 201–219, the comparable state statute, Mass. Gen. Laws ch. 151, §§ 1–22, and Mass Gen. Laws ch. 149, § 184.2d Am. Compl. ¶ 1 [Doc. No. 21 in Civ. Action No. 01–11240]. In the second suit (the "Discrimination Action"), Mogilevsky asserted claims under the federal Age Discrimination in Employment Act, 29 U.S.C. §§ 621–634, the Americans with Disabilities Act, 42 U.S.C. §§ 12101–12213, and the comparable state statute, Mass. Gen. Laws ch. 151B, alleging discrimination on account of age and perceived disability, and for reprisal. 1st Am. Compl. ¶ 1 [Doc. No. 30 in Civ. Action No. 01–11749] ("Discrimination Compl."). In addition, he asserted a violation of the federal Family and Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601–2654. *Id.*

Having prevailed in part in the FLSA Action, and having secured an Agreement for Judgment in the Discrimination Action, Mogilevsky now seeks attorney's fees and costs. [Doc. No. 59 in Civ. Action No. 01–11240, Doc. No. 59 in Civ. Action No. 01–11749]. As these actions involve the same parties, attorneys, and related facts and circumstances, they are appropriately treated together.

## I. PROCEDURAL HISTORY

### A. The FLSA Action

Mogilevsky originally filed this case in the Massachusetts Superior Court sitting in and for the County of Suffolk on April 7, 2001 and amended his complaint on June 19, 2001. Notice of Removal [Doc. No. 1] at 1. Bally removed the action to this Court on July 18, 2001, *id.*, and filed its answer on August 15, 2001, [Doc. No. 5].

Mogilevsky served discovery requests on Bally at the end of October and Bally responded in December 2001. Def.'s Opp'n ("Def.'s FLSA Opp'n") [Doc. No. 69] at 2. During discovery, the parties attempted mediation before Magistrate Judge Cohen in January 2002 without reaching a settlement. Order of 1/17/02. [Doc. No. 13]. On February 26, 2002, Mogilevsky, without objection, amended his complaint for the purpose of transferring certain of his claims to the related Discrimination Action. [Doc. No. 14]. The parties conducted depositions in March 2002 followed by Mogilevsky's second document request. Def.'s FLSA Opp'n at 2. On April 5, 2002, Mogilevsky filed a second amended complaint. [Doc. No. 21].

The parties again attempted mediation in July 2002, but were unsuccessful in reaching agreement. Report of 7/25/02 [Doc. No. 31]. A final pretrial conference was held on July 29, 2002, during which the parties filed a joint pretrial statement, which they subsequently amended on August 21, 2002 [Doc. No. 34].

On August 26, 2002, Bally made an Offer of Judgment under Fed.R.Civ.P. 68, submitting that judgment be taken against it in the amount of $5,000 plus costs and attorneys fees. [Doc. No. 58]. Mogilevsky did not accept the offer.

On September 13, 2002, the parties filed trial briefs and proposed findings of fact and conclusions of law. [Doc. Nos. 39–40]. The Court conducted a bench trial on September 17, 18, 26 and 27. At the conclusion of the trial, the Court ordered supplemental briefing in the nature of an accounting in light of the Court's tentative findings and rulings. The parties made further submissions during November and December 2002 [Doc. Nos. 45, 48–51] as well as in April 2003 [Doc. Nos. 54–55]. The Court rendered its opinion on May 13, 2003, *Mogilevsky v. Bally Total Fitness Corp.*, 263 F.Supp.2d 164 (D.Mass. 2003), and judgment entered in Mogilevsky's favor on May 15, 2003, in the amount of $4,567.21 [Doc. No. 57]. Mogilevsky filed a motion to alter or amend

the judgment on May 27, 2003 [Doc. No. 61], which was denied, Order of 6/2/03.

### B. The Discrimination Action

Mogilevsky first filed a complaint with the Massachusetts Commission Against Discrimination on December 21, 2000. Discrimination Compl. ¶ 36. The parties conducted discovery, including the taking of depositions, while the matter was pending at the agency level. Pl.'s Rev'd Mem. at 2 ("Pl.'s Discrimination Mem.") [Doc. No. 63]. Following the agency proceedings and issuance of an EEOC right to sue letter with respect to Mogilevsky's federal claims, the case commenced in this Court on October 11, 2001. Discrimination Compl.

Discovery continued, beginning in March 2002. Pl.'s Discrimination Mem. at 2. Mogilevsky deposed two Bally witnesses on October 29, 2002, and two more on November 13, 2002. Def.'s Opp'n ("Def.'s Discrimination Opp'n") [Doc. No. 64] at 2.

Bally filed a motion for summary judgment on December 9, 2002 [Doc. No. 17], which was opposed by Mogilevsky in a memorandum filed on December 23, 2003 [Doc. No. 21]. Bally filed a reply brief [Doc. No. 25] and this Court, after hearing, denied Bally's motion on January 15, 2003 [Doc. No. 31]. The matter was then set to be tried before a jury on April 22, 2003. *See* Doc. No. 33. On the first scheduled day of trial, the case was settled, and the parties filed an Agreement for Judgment in the amount of $70,000 plus costs and reasonable attorney's fees to be assessed by the Court. [Doc. No. 46].

## II. DISCUSSION

### A. Determining Attorney's Fees

In the FLSA Action, Mogilevsky is entitled to reasonable attorney's fees and costs under 29 U.S.C. § 216(b) and Mass. Gen. Laws ch. 149, § 150. In the Discrimination Action, Mogilevsky seeks his attorney's fees and costs under the Agreement for Judgment, and under 42 U.S.C. § 12117 (claims brought under the ADA, to which 42 U.S.C. § 2000e-5(k) applies), 29 U.S.C. § 626(b) (claims brought under the ADEA, to which 29 U.S.C. § 216(b) applies), 29 U.S.C. § 2617(a)(3) (claims brought under the FMLA), and under Mass. Gen. Laws ch. 151B, § 9 (claims brought under Mass. Gen. Laws. ch. 151B). Each of these statutes permits the plaintiff to recover reasonable attorney's fees and costs.

It is well established that the lodestar approach, "which computes attorney's fees by multiplying the number of hours reasonably spent on a case by a reasonable hourly rate," is the appropriate method of determining attorney's fees under the fee-shifting provisions applicable in these cases. *Martino v. Massachusetts Bay Transp. Auth.*, 230 F.Supp.2d 195, 201 (D.Mass.2002) (citing, *inter alia, Blum v. Stenson*, 465 U.S. 886, 897, 104 S.Ct. 1541, 79 L.Ed.2d 891 (1984), and *Hensley v. Eckerhart*, 461 U.S. 424, 433 & n. 7, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)).

### 1. Reasonable Hourly Rate

In determining what hourly rate to apply to Mogilevsky's attorney in the lodestar calculation, this Court must find "the prevailing hourly rate in Boston for attorneys of comparable skill, experience, and reputation." *Martino*, 230 F.Supp.2d at 205. The burden is on Mogilevsky to provide this Court with affidavits and other forms of evidence that: "(1) establish his lawyer['s] skills and experience, and (2) inform the Court of the prevailing market rate in the community for attorneys with such qualifications." *Id.* (citing *Blum*, 465 U.S. at 895-96 n. 11, 104 S.Ct. 1541, and *System Mgmt. v. Loiselle*, 154 F.Supp.2d 195, 209 (D.Mass.2001)).

Mogilevsky submits affidavits from his attorney, Harvey Shapiro, Esq. ("Shapi-

ro"), in which Shapiro requests an hourly rate of $200 for his work on both of these cases. Shapiro Affs. [Doc. No. 65 in Civ. Action No. 01–11240, Doc. No. 53 in Civ. Action No. 01–11749] ¶ 8.[1] Shapiro's affidavits demonstrate that he has had a long and impressive career as an attorney in the Boston area. After graduating from Harvard Law School in 1973, Shapiro began his career as a staff attorney with Greater Boston Legal Services, where he worked from 1974 to 1985. *Id.* at ¶¶ 1, 3. Subsequently, he was a partner in the law firm of Collier, Shapiro & McCutcheon, until he began his practice as a solo practitioner in November 2000. *Id.* ¶ 2.

Shapiro has practiced "at all levels of the state and federal courts," with "substantial work in the housing, real estate, consumer, and public benefits areas, frequently with emphasis on Chapter 93A [the Massachusetts Consumer Protection Act]." *Id.* ¶ 4. In addition, he has served on a number of legal education panels throughout his tenure as a member of the Massachusetts bar. *Id.* ¶ 5.

Mogilevsky also proffers the affidavits of Dahlia Rudavsky, Esq. ("Rudavsky"). Rudavsky Affs. [Doc. No. 66 in Civ. Action No. 01–11240, Doc. No. 54 in Civ. Action No. 01–11749]. Rudavsky, who is a partner in the law firm of Messing, Rudavsky & Weliky, P.C. and has been a member of the Massachusetts Bar since 1980, states that the market rate charged for her time and that of her partner is $345 per hour. Rudavsky Affs. ¶ 3. Rudavsky states that in *McMillan v. Massachusetts Society for Prevention of Cruelty to Animals,* 880 F.Supp. 900 (D.Mass.1995) (Stearns, J.), *aff'd in part, vacated in part, and remanded,* 140 F.3d 288 (1st Cir.1998), she was awarded fees at the rate of $285 and $295

per hour. *Id.* ¶ 4. She also asserts that she is familiar with prevailing market rates for Boston area law firms and with awards of attorneys' fees made to counsel for prevailing plaintiffs in employment discrimination cases, and submits that the $200 hourly rate requested by Attorney Shapiro is "quite modest" given his experience level, and that it "understates the fair market value of his services." *Id.* ¶ 6.

■ Two factors, however, weigh against Rudavsky's opinion. First, although Shapiro states that he has "litigated some employment related disputes," he acknowledges that he had not "previously litigated any claims under the federal or state statutes governing minimum wage and overtime payments." Shapiro Affs. ¶ 6. Second, as a solo practitioner, Shapiro performed virtually all of the work on Mogilevksy's cases himself, without substantial assistance from junior attorneys, paralegals, or the like. The First Circuit has suggested that a court "should filter out the 'non-core' (*i.e.,* less lawyerly) work from the 'core' (*i.e.,* more lawyerly) work, and compensate the 'non-core' work at two-thirds the reasonable hourly rate for 'core' work". *System Management,* 154 F.Supp.2d at 201. While this Court initially followed the "core" versus "non-core" distinction, *id.* at 209 n. 2, the Court changed its approach in *System Management,* where, after substantial analysis, it determined that once the appropriate hourly rate and number of hours reasonably expended are determined, the lodestar calculation will yield a presumptively correct result and that "additional tinkering merely serves to double count some factors." *Id.* at 209. Of course, a court must not permit an attorney to recover his "standard hourly rate ... for performing tasks appropriate to either a less experi-

---

1. There are a couple of instances where virtually identical affidavits were submitted in the two cases. The Court will generally treat such twin affidavits as one document for short-form citation purposes.

enced lawyer or a secretary or paralegal." *McMillan,* 140 F.3d at 308. Shapiro performed many such tasks. In light of that fact, this Court adopts a reasonable fee that is somewhat lower than the prevailing market rate for attorneys of Shapiro's qualifications and experience, and applies this reduced rate to all hours reasonably expended. The Court considers a harmonized rate of $175 per hour to be reasonable in light of the substantial time Shapiro spent engaged in tasks that "would no doubt have been performed by employees with significantly lower hourly rates."[2] *Martino,* 230 F.Supp.2d at 205.

### 2. Reasonable Hours Expended

 Having arrived at an appropriate hourly rate, the Court now determines the number of hours reasonably spent on the litigation. *Grendel's Den, Inc. v. Larkin,* 749 F.2d 945, 950 (1st Cir.1984). To arrive at this number, the Court must first "determine the number of hours actually spent and then subtract from that figure hours which were duplicative, unproductive, excessive, or otherwise unnecessary." *Id.* (citing *Hensley v. Eckerhart,* 461 U.S. 424, 432–35, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983), *Wojtkowski v. Cade,* 725 F.2d 127, 130 (1st Cir.1984), and *Furtado v. Bishop,* 635 F.2d 915, 920 (1st Cir.1980)). Attorneys seeking fee awards must provide "detailed contemporaneous time records," to avoid a "substantial reduction in any award, or, in egregious cases, disallowance." *Grendel's Den,* 749 F.2d at 952.

Mogilevsky's counsel has met his documentation burden in both of these cases by producing a 142–page itemization in the FLSA Action and a 150–page itemization in the Discrimination Action. [Doc. No. 67 in Civ. Action No. 01–11240, Doc. No. 56 in Civ. Action No. 01–11479]. These submissions itemize all aspects of Shapiro's involvement in these cases and preclude any reduction on the basis of insufficient documentation.

 This does not end the inquiry, however. When determining the number of billable hours to allow, a Court "has a right—indeed, a duty—to see whether counsel substantially exceeded the bounds of reasonable effort." *Guckenberger v. Boston University,* 8 F.Supp.2d 91, 99–100 (D.Mass.1998) (Saris, J.) (quoting *United States v. Metropolitan Dist. Comm'n,* 847 F.2d 12, 17 (1st Cir.1988)) (internal quotation marks omitted). "[T]he law firm's bill need not be swallowed whole by the client's litigation adversary just because it *is* the law firm's bill." *Metropolitan District Commission,* 847 F.2d at 17 (emphasis in original). Nor need the district judge "feel handcuffed by counsel's submission of time records, no matter how elaborate." *Id.* at 18. Rather, the judge must "draw[ ] on his own experience and wisdom [in] deciding whether the time spent on each phase was in excess of a reasonable amount." *Id.* (alterations in original) (quoting *Gabriele v. Southworth,* 712 F.2d 1505, 1507 (1st Cir.1983)) (internal quotation marks omitted).

### a. The FLSA Action

Shapiro reports that he spent a total of 830.1 hours working on the FLSA Action.[3]

---

2. Shapiro requests an hourly rate of $150 for the time he spent in preparing the fee petitions in these cases. Because the Court selects $175 as a harmonized rate, it will use that rate for both the allowable fee petition hours and the other work performed by Shapiro.

3. The actual total shown is 830.12 hours, with all amounts calculated in increments of one-hundredth of an hour. Shapiro FLSA Aff., Add. D at 1. While the Court acknowledges the importance of attorneys' providing detailed accounts of time spent and appreciates this level of granularity (which amounts to increments of thirty-six seconds), in light of

Shapiro FLSA Aff., Add. D at 1. Of this amount, he attributes 5.0 hours to the work of a paralegal, with the remaining 825.1 hours owing to his personal efforts. *Id.* Shapiro proposes numerous adjustments to this total to account for hours spent on unsuccessful claims (100.0 hours), the motion to alter or amend the judgment (20.4 hours), post judgment settlement efforts (3.0 hours), client relations (24.8 hours), and the companion case (31.6 hours). *Id.* at 1–2. He also suggests a reduction equivalent to 51.4 hours for failure to prove willful violations on the claims on which Mogilevsky succeeded, and a reduction equivalent to 117.4 hours for failing to obtain a judgment that exceeded the amount of Bally's Rule 68 Offer of Judgment. *Id.* at 2–3. After all deductions, Shapiro seeks total fees of $92,465.83. *Id.* at 3.

Bally, on the other hand, argues that this Court should award a total of $20,000 in legal fees to Mogilevsky. Def.'s FLSA Opp'n at 19. In addition to its argument regarding Shapiro's hourly rate, Bally submits that this Court should substantially reduce the fees because Shapiro failed to obtain an award greater than the amount offered by Bally, was unsuccessful on several claims, and billed hours that, even with the proposed adjustments, are excessive. *Id.* at 1. The Court addresses these arguments in turn.

### i. Effect of the Rule 68 Offer

On August 26, 2002, Bally tendered a Rule 68 Offer of Judgment in the amount of $5,000 plus attorneys fees and costs accrued to date. Mogilevsky refused this offer and, at trial, was awarded $4,567.21, $432.79 less than the offer. Under Rule 68, "[i]f the judgement finally obtained by the offeree is not more favorable than the offer, the offeree must pay the costs incurred after the making of the offer." Fed.R.Civ.P. 68. The rule is designed to "encourage settlement of disputes and avoid protracted litigation." *Crossman v. Marcoccio,* 806 F.2d 329, 332 (1st Cir. 1986).

In *Marek v. Chesny,* 473 U.S. 1, 105 S.Ct. 3012, 87 L.Ed.2d 1 (1985), the Supreme Court addressed the question "whether the term 'costs' in Rule 68 includes attorney's fees awardable under 42 U.S.C. § 1988." *Id.* at 5, 105 S.Ct. 3012. The Supreme Court noted that under the plain language of Section 1988, the prevailing party in a Section 1983 action may recover attorney's fees "as part of the costs," *id.* at 9, 105 S.Ct. 3012, and held that plaintiffs "who reject an offer more favorable than what is thereafter recovered at trial will not recover attorney's fees for services performed after the offer is rejected," *id.* at 10, 105 S.Ct. 3012. Thus, when a statute includes attorney fees as part of the costs, *Chesny* applies and potentially will bar recovery of attorney's fees for services performed after refusal of a Rule 68 offer. Where the statute does *not* include attorney's fees as part of the costs, however, *Chesny* is not implicated.

Mogilevsky seeks to recover his attorney's fees under the penalty provision of the FLSA, 29 U.S.C. § 216(b), which allows a prevailing plaintiff to recover "a reasonable attorney's fee to be paid by the defendant, and costs of the action," and under Mass. Gen. Laws ch. 149, § 150, which entitles prevailing plaintiffs to "an award of the costs of the litigation and reasonable attorney fees." Because neither of these statutes includes attorney's fees as an element of costs, "unlike attor-

the approximate nature of the equitable adjustment to be made to this total, the Court has rounded all entries to the nearest one-tenth of an hour (which amounts to increments of six minutes).

ney fees in a section 1983 action, attorney fees in an FLSA Action are not automatically shifted by Rule 68." *Haworth v. Nevada,* 56 F.3d 1048, 1051 (9th Cir.1995). Bally suggests that *Chesny* properly should be read to apply to FLSA actions. Def.'s FLSA Opp'n at 12. In support, it notes that the Supreme Court held that "absent congressional expressions to the contrary, where the underlying statute defines 'costs' to include attorneys' fees, . . . such fees are to be included as costs for purposes of Rule 68." *Chesny,* 473 U.S. at 9, 105 S.Ct. 3012. While Bally focuses this Court's attention on the words "absent congressional expressions to the contrary," the text that immediately follows that phrase clearly limits its application to statutes which "define[ ] 'costs' to include attorneys' fees." *Id.* As the fee-shifting statutes in play here do not "define" costs to include such fees, Bally's argument fails.

Moreover, Congress is not without the means expressly to indicate that a rejected Rule 68 offer may cut off the right to attorney's fees. For example, the Individuals with Disabilities Education Act, 20 U.S.C. §§ 1400–1490, contains the following provision:

> Attorneys' fees may not be awarded and related costs may not be reimbursed in any action or proceeding under this section for services performed subsequent to the time of a written offer of settlement to a parent if—
> (I) the offer is made within the time prescribed by Rule 68 of the Federal Rules of Civil Procedure or, in the case of an administrative proceeding, at any time more than 10 days before the proceeding begins;

> (II) the offer is not accepted within 10 days; and
> (III) the court or administrative hearing officer finds that the relief finally obtained by the parents is not more favorable to the parents than the offer of settlement.

20 U.S.C. § 1415(i)(3)(D)(i). Congress could have enacted a similar provision in the FLSA in the nineteen years since *Chesny* was decided. It has not.

■ Of course, the Court must exercise caution in attributing weight to congressional silence, *United States v. Wells,* 519 U.S. 482, 495–96, 117 S.Ct. 921, 137 L.Ed.2d 107 (1997), particularly in the absence of a strong judicial signal equivalent to "virtually unanimous accord" among courts of appeals on the specific question before it, *see General Dynamics Land Sys., Inc. v. Cline,* —— U.S. ——, 124 S.Ct. 1236, 1244–45, 157 L.Ed.2d 1094 (2004). Although *Chesny* indicated how future courts would interpret the FLSA, it did not specifically discuss the FLSA, so the opinion was less likely to register on Congress's radar screen as implicating the FLSA.[4] Still, congressional silence is probative, and when combined with the existence of alternative statutory formulations regarding fees and costs, points to the best interpretation.

■ Although the statute does not impose a *per se* rule cutting off attorney's fees after refusal of a Rule 68 offer, this Court may consider Mogilevsky's refusal of Bally's offer as a factor in determining whether the hours worked on the case were excessive. *Haworth,* 56 F.3d at 1052. The fact that a plaintiff may have "an

---

4. For an example of a swift congressional overruling of a Supreme Court interpretation of a statute, compare *Finley v. United States,* 490 U.S. 545, 555–56, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989), which held that the Federal Tort Claims Act, 28 U.S.C. § 1346(b), did not permit exercise of pendent-party jurisdiction over additional parties as to which no basis for federal jurisdiction existed, with the Judicial Improvements Act of 1990, Pub.L. No. 101–650, 104 Stat. 5089, which amended 28 U.S.C. § 1367 to overrule *Finley.*

FLSA violation in her pocket does not give her a license to go to trial, run up the attorney fees and then recover them from the defendant." *Id.*

Of the 764.2 hours Mogilevsky claims for work excluding the fee petition, 292.7 hours were devoted to work performed after Bally's Rule 68 Offer of Judgment. Add. D at 2 n. 6. Thus, work performed after the offer represents 38.3% of the total. Mogilevsky proposes a 50% reduction of Shapiro's hours incurred after the Rule 68 offer, and the Court adopts his suggestion. Consequently, the Court will reduce the calculated lodestar amount by 19.15% to account for Mogilevsky's failure to realize a judgment more favorable than Bally's Rule 68 offer.

### ii. Limited Results Obtained

Analysis of the results obtained is a "preeminent consideration in the fee-adjustment process." *Coutin v. Young & Rubicam Puerto Rico, Inc.,* 124 F.3d 331, 338 (1st Cir.1997). In *Coutin,* the First Circuit explained that the meaning of "results obtained" includes (1) "a plaintiff's success claim by claim"; (2) "the relief actually achieved"; and (3) "the societal importance of the right which has been vindicated." *Id.* Based on its analysis of these three factors, the Court concludes that adjustment to the lodestar is appropriate.

The Court first considers the substantial importance of the rights protected by the FLSA, which was passed "to aid the unprotected, unorganized and lowest paid of the nations's working population; that is, those employees who lacked sufficient bargaining power to secure for themselves a minimum subsistence wage." *Brooklyn Sav. Bank v. O'Neil,* 324 U.S. 697, 707 n. 18, 65 S.Ct. 895, 89 L.Ed. 1296 (1945) (citing FLSA legislative history). FLSA cases thus involve rights that are important in themselves, and Congress has implicitly made a judgment that FLSA suits are likely to lead to changes in an employer's practices that have effects beyond the immediate suit. *See id.* at 706–07 & nn. 17–18, 65 S.Ct. 895. Mogilevsky, having prevailed on certain of his claims, is thus entitled to a substantial fee award under the FLSA.

As Bally points out, however, Mogilevsky failed to prove his claim for 1,402.5 hours of unpaid floor time and 287 hours of overtime based on the contention that he had accumulated that number of personal training coupons. Def.'s FLSA Opp'n at 14. He also failed to prevail on his state law claim for unpaid wages, his breach of contract claim for hours worked before May 18, 1999, and his contract claim for a higher rate of vacation pay. *Id.* Finally, by failing to prove willfulness on Bally's part, Mogilevsky failed to obtain the three-year FLSA statute of limitations. Def.'s FLSA Opp'n at 14.

Mogilevsky concedes that he did not prevail in these matters and, although these claims are somewhat interrelated with those on which he did succeed, he proposes adjustments to the fees on this basis. He proposes a reduction of 100.0 hours for those claims on which he was not successful, plus a reduction of 10% of the net fee claimed after all other deductions. Add. D. at 1–3.

The Court, having considered both parties' arguments, determines that a reduction of 15.0% of the lodestar amount is appropriate in light of Mogilevsky's limited success in this case.

### iii. Excessive Hours

As Bally points out, "[d]espite the complicated chalks and charts designed by Mogilevsky and his counsel, this was a simple matter. Mogilevsky alleged that he had worked thousands of hours for which he was uncompensated or shortchanged, and Bally denied those claims." Def.'s FLSA Opp'n at 15. In total, there were

five depositions, none of which required more than half a day, and all of which were completed in less than twelve hours in the aggregate. *Id.* at 15–16. There was limited paper discovery, some mediation, one discovery dispute (decided by this Court on the papers), no summary judgment motion filed, and a four-day jury-waived trial. *Id.*

Shapiro begins with a request of $162,373.00. Add. D. at 1. Then he reduces this amount by $69,707.17 to arrive at his net request of $92,465.83. *Id.* at 1–3. Shapiro's calculations, however, sidestep the unavoidable fact that expenditure of 830 hours of effort on a case of this level of complexity is excessive. The Court, therefore, in the exercise of its discretion, must evaluate the time spent in this case and determine a reasonable number of hours to allow for each category of work performed. Shapiro's affidavit breaks the time into numerous categories, which the Court has carefully evaluated before making the adjustments shown below:

| FLSA ACTION CATEGORY OF WORK PERFORMED | REQUESTED HOURS | ALLOWED HOURS |
|---|---|---|
| Research and Drafting Complaints | 47.9 | 47.9 |
| Additional Research | 24.6 | 0.0 |
| Conferencing with Client and Opposing Attorney | 40.0 | 20.0 |
| Document Review and Analysis | 39.4 | 24.0 |
| Preparation and Evaluation of Statistical Data, Tables, and Chalks | 37.5 | 20.0 |
| Scheduling, Pre-trial, and Settlement Conferences | 22.4 | 22.4 |
| Depositions | 79.3 | 79.3 |
| Discovery (Excluding Depositions) | 60.9 | 60.9 |
| Mediation and Settlement | 68.7 | 68.7 |
| Preparation of Joint Pre-trial Memorandum; Computation and Negotiation of Stipulations | 40.4 | 40.4 |
| Trial Memorandum and Proposed and Supplementary Findings of Fact | 48.6 | 48.6 |
| Evaluation and Assembly of Exhibits and Exhibit Books | 13.6 | 13.6 |
| Trial Preparation | 79.4 | 40.0 |
| Trial | 16.5 | 16.5 |
| Post–Trial Analysis & Submissions | 99.9 | 40.0 |
| Motion to Alter or Amend Judgment | 20.4 | 0.0 |
| Application for Attorney's Fees | 61.0 | 30.0 |
| Miscellaneous | 14.1 | 0.0 |
| Paralegal Time | -5.0 | -5.0 |
| **Total:** | 809.6 | 567.3 |

The award for the FLSA Action is calculated as the product of the 567.3 allowed hours and the allowed hourly rate of $175. This yields a lodestar of $99,277.50 before further adjustments. The lodestar is then reduced by the adjustments for continuing the litigation beyond the point of the Rule 68 Offer (19.15%) and for achieving limited success (15.0%), resulting in a 34.15% total reduction of the fee. This results in an adjusted award of $65,374.23.

In addition, Mogilevsky claims $2,574.94 in costs after adjustments and $200.00 for five hours of paralegal time. The Court approves both of these charges in full. Thus, Mogilevsky's total recovery for the FLSA Action is $68,149.17, including costs.[5]

**5.** The Court notes that under Rule 68, Bally is entitled to costs it has incurred after making

## b. The Discrimination Action

In the Discrimination Action, Mogilevsky seeks attorney's fees of $145,606.00. Shapiro Discrim. Aff., Add. E at 1. Bally argues that the Court should limit its award to $41,972.37. Def.'s Discrimination Opp'n at 20.

In support of his motion, Mogilevsky first argues that his recovery of $70,000 was "substantial, especially in light of his re-employment in August 2002, and his annual compensation." Pl.'s Discrimination Mem. at 10. Further, Bally agreed to indemnify Mogilevsky against any attempt by the Division of Employment and Training to recover all or a portion of the $35,000 in benefits that he had received while unemployed. *Id.* at 10–11. Thus, the total value of the settlement was $105,000, which exceeded the amount that Mogilevsky would have earned from Bally during the period of his unemployment. *Id.* at 11. Additionally, Mogilevsky correctly points out that courts must consider "the societal importance of the vindicated right" when determining the reasonableness of an attorney's fee petition. *Id.* at 12.

While Mogilevsky's substantial recovery precludes reduction of his attorney's fee award on the basis of "limited success," Bally maintains that the fee Mogilevsky is requesting is "patently unreasonable when compared to awards on matters in this district that went to trial." Def.'s Discrim. Opp'n at 11. Bally cites numerous cases in support of its contention that Mogilevsky's fee request is "far off base":

- *Alfonso v. Aufiero*, 66 F.Supp.2d 183 (D.Mass.1999) (Saris, J.). The Court awarded plaintiffs $129,903 in fees in a "contentious civil rights action against the City of Somerville ... and eight of its police officers." *Id.* at 188. The case was tried to a jury for twelve days. *Id.* at 190. After seven days of deliberations, the jury returned a verdict, but post-trial motions and "wrangling" occupied the parties and court until the case ultimately settled months later during a conference with the court. *Id.* at 189–90.

- *Connolly v. Harrelson*, 33 F.Supp.2d 92 (D.Mass.1999). This Court awarded plaintiffs $79,949.41 in fees *after* a civil rights trial. *Id.* at 99.

- *Wilson v. McClure*, 135 F.Supp.2d 66 (D.Mass.2001). This court awarded plaintiffs $58,195.41 in fees *after* the trial of the plaintiffs' claims of racial discrimination. *Id.* at 74.

- *Davignon v. Clemmey*, 176 F.Supp.2d 77 (D.Mass.2001), *vacated in part*, 322 F.3d 1 (1st Cir.2003). This Court awarded $81,375.00 in fees, a holding that was not disturbed on appeal, in a Massachusetts civil rights matter that was tried to a jury and resulted in a jury verdict of $4,850,000.00. *Id.* at 98. After the verdict, defendants filed motions for new trial, remittitur, and enforcement of an earlier agreement for judgment. *Id.*

Def.'s Discrim. Opp'n at 11–12. In light of the straightforward nature of the claims in this matter, the limited procedural history, and the fact that the case settled before empanelment of the jury, this Court finds that the hours worked on this case were excessive and that a substantial reduction is warranted. As with the FLSA case, the Court has carefully evaluated the filings before making the adjustments shown below:

its offer to Mogilevsky. Because Bally has not submitted a Bill of Costs, however, the

Court does not address the matter in this Memorandum and Order.

| DISCRIMINATION ACTION<br>CATEGORY OF WORK PERFORMED | REQUESTED HOURS | ALLOWED HOURS |
|---|---|---|
| Research and Drafting Complaints | 90.6 | 40.0 |
| Conferencing with Client and Opposing Attorney | 28.1 | 20.0 |
| Document Review and Analysis | 20.5 | 10.0 |
| Scheduling, Pre-trial, and Settlement Conferences | 13.5 | 13.5 |
| Depositions | 95.0 | 40.0 |
| Discovery (Excluding Depositions) | 97.7 | 40.0 |
| Summary Judgment Practice | 84.3 | 84.3 |
| Mediation and Settlement Practice | 55.3 | 55.3 |
| Preparation of Jury Instructions and Special Questions, Related Research | 51.4 | 20.0 |
| Preparation of Joint Pre-trial Memorandum Preparation; Computation and Negotiation of Stipulations | 30.8 | 30.8 |
| Evaluation and Assembly of Exhibits and Exhibit Books | 14.1 | 14.1 |
| Trial Preparation | 63.0 | 40.0 |
| Application for Attorney Fee's | 57.0 | 30.0 |
| FLSA–Related Discrimination Entries | 34.1 | 0.0 |
| Miscellaneous | 12.0 | 0.0 |
| **Total:** | 747.4 | 438.0 |

The award for the discrimination action is calculated as the product of the 438.0 allowed hours multiplied by the allowed hourly rate of $175. This results in an award of $76,650.00.

In addition, Mogilevsky documents $5,172.07 in costs, which the Court has reviewed and approves in full. Thus, Mogilevsky's total recovery for the discrimination action is $81,822.07, including costs.

## B. Interest on Awards

A final matter remains concerning whether interest on either of these attorney's fee awards may already be due under 28 U.S.C. § 1961(a), which provides that "[i]nterest shall be allowed on any money judgment in a civil case recovered in a district court."

There are often two distinct judgments in civil rights cases. The first, known as the "merits judgment," grants the prevailing party the right to recover attorney's fees. The second, known as the "exact quantum judgment," defines the precise amount of the fee award. *See* Nick J. Kemphaus & Richard A. Bales, *Interest Accrual on Attorney's Fee Awards,* 23 Rev. Litig. 115, 116 (2004). The circuits are split as to when interest on an attorney fee award begins to accrue, with the Fifth, Sixth, Eighth, Ninth, Eleventh, and Federal Circuits holding that interest begins to accrue under section 1961(a) from the date of the merits judgment, and the Third, Seventh, and Tenth Circuits holding that interest begins to accrue on the date of the exact quantum judgment. *Id.* at 116–17 (collecting cases). In *Foley v. City of Lowell,* 948 F.2d 10 (1st. Cir.1991), the First Circuit held that "if an attorneys' fee award is incorporated in a final judgment, as here, interest will thereafter accrue on the amount of the award." *Id.* at 21. It did not, however, reach the question whether "postjudgment interest begins to accrue from the date a judgment expressly and unconditionally establishing a party's right to attorneys' fees is entered or from the date of a judgment that establishes the quantum of such fees," because the judgment at issue in *Foley* did not mention attorneys' fees and the statute governing their award was permissive rather than

mandatory. *See id.* at 22 & n. 16; *see also* 42 U.S.C. § 1988 (stating that a court "in its discretion, *may* allow the prevailing party ... a reasonable attorney's fee as part of the costs." (emphasis added)). Thus, entry of the merits judgment in *Foley* did not "unconditionally establish" a right to attorney's fees.

In the FLSA Action, in contrast to *Foley*, the statutes authorizing fees are not discretionary; therefore, the right to recover attorney's fees in that case was unconditionally established upon entry of the merits judgment. *See* 29 U.S.C. 216(b) ("The court ... *shall*, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." (emphasis added)); Mass. Gen. Laws ch. 149, § 150 ("An employee ... who prevails ... *shall* be entitled to an award of the costs of the litigation and reasonable attorney fees." (emphasis added)).[6] Moreover, in the Discrimination Action, the Agreement for Judgment explicitly calls for Bally to pay "costs and reasonable attorney's fees to be assessed by the Court." Agreement for Judgment [Doc. No. 50 in Civ. Action No. 01–11749] at 1. Consequently, this Court must reach the issue of when interest on attorney's fees should begin to accrue.

Two recent cases typify the split in authority on this issue. In the first case, *Eaves v. County of Cape May*, 239 F.3d 527 (3d Cir.2001), the plaintiff prevailed in her Title VII claim for employment discrimination and retaliation in a trial to a jury. On August 11, 1998, the district court entered judgment on the jury verdict in her favor, "together with attorney's fees and costs in an amount to be determined

pursuant to Rule 54(d), Fed.R.Civ.P." *Id.* at 528. More than sixteen months later, on January 27, 2000, the district court resolved the motion for attorney's fees that had been pending and held that interest would accrue as of the August 11, 1998 judgment, which it amended to incorporate the quantification of the fee award and its ruling that interest was to run as of the date of the first judgment. *Id.* at 528–29. The Third Circuit reversed.

Although it acknowledged that the " 'majority view' ... is that post-judgment interest on an attorney's fee award runs from the date that the district court enters a judgment finding that the prevailing party is entitled to such an award," *id.* at 531, the Third Circuit believed that decisions adopting this view "ignore a textual analysis of § 1961(a) and, instead base their result on policies they find to underlie post-judgment interest and attorney's fee awards." *Id.* at 532. For the Third Circuit, the correct answer is dictated by the text of section 1961(a) and by case law interpreting the term "money judgment." *Id.* The Court considered the language of section 1961(a), which states that "[i]nterest shall be allowed on any money judgment" followed by "interest shall be calculated from the date of ... judgment." Ruling that the judgment referred to in the second clause is the "money judgment" specified in the first, the Court held that, by the terms of section 1961(a), "post-judgment interest does not begin to run until the district court enters the judgment at issue, *i.e.*, the 'money judgment.' " Kemphaus & Bales, *supra*, at 124 (quoting *Eaves*, 239 F.3d at 532; 28 U.S.C. § 1961(a)).

---

6. The Massachusetts fee-shifting statute is relevant to this analysis in that a plaintiff "who prevails on congruent federal and state claims and qualifies for fee-shifting under two or more statutes may recover fees under whichever fee-shifting regime she chooses." *Coutin*, 124 F.3d at 342 (citing *Freeman v. Package Machine Co.*, 865 F.2d 1331, 1347 (1st Cir. 1988)).

On the other hand, the Sixth Circuit recently examined the question and determined that the point where interest on an attorney's fees award begins to accrue is the date of the merits judgment. *Associated Gen. Contractors of Ohio, Inc. v. Drabik*, 250 F.3d 482 (6th Cir.2001). In *Drabik*, the plaintiff sued the Director of the Ohio Department of Administrative Services pursuant to 42 U.S.C. § 1983, alleging that the Ohio Minority Business Enterprise Act, which provided for set-aside bidding for minority-owned businesses, was unconstitutional. *Id.* at 483. On November 3, 1998, the district court entered judgment granting the relief sought and approving the plaintiff's request for attorney's fees. *Id.* Subsequently, on October 13, 1999, the court granted the plaintiff's motion for fees in the amount of $113,915.48, and in a ruling issued on January 5, 2000, the district court held that interest on the attorney's fees accrued from November 3, 1998, the date of the merits judgment. *Id.* at 484.

On appeal, the Sixth Circuit affirmed, holding that "a judgment that unconditionally entitles a party to reasonable attorney fees is the 'money judgment' contemplated by § 1961." *Id.* at 490. The Sixth Circuit ruled that, in drafting section 1961, "Congress used the term 'money judgment' in its commonly understood sense of the judgment on a verdict." *Id.* at 494 (citing *Eaves*, 239 F.3d at 535 ("[T]he phrase 'money judgment' commonly refers to a judgment entered upon a jury verdict.")). It reasoned that "[i]f interest does not accrue from the time a party becomes entitled to such fees, the losing party has every reason to delay quantification of the fees." *Id.* at 494. To deny plaintiffs the right to interest during the potentially lengthy period prior to such quantification would unfairly prejudice them and unfairly

benefit losing parties, who would retain the use of the money during the interim period without being required to pay its value. *Id.* at 495. On the other hand, requiring the losing party to pay interest on the award from the time of the merits judgment works no prejudice since that party has the use of the funds during the intervening period between the merits judgments and the judgment fixing the amount of the fees. *Id.*

This Court rules that the view persuasively espoused in the Sixth Circuit's opinion in *Drabik* is the correct one. The Court therefore holds that interest on the awarded attorney's fees and costs in each of these actions shall accrue as of the date of the underlying merits judgments pursuant to 28 U.S.C. § 1961(a). For the FLSA Action, that date is May 15, 2003 [Doc. No. 57 in Civ. Action No. 01–11240], and for the Discrimination Action, that date is May 12, 2003 [Doc. No. 46 in Civ. Action No. 01–11749].

## III. CONCLUSION

For the reasons expressed above, Mogilevsky's motions for attorney's fees and costs [Doc. 59 in Civ. Action No. 01–11240, Doc. No. 59 in Civ. Action No. 01–11749] are **ALLOWED** as modified by the Court.

The total amount allowed for the FLSA Action is $68,149.17, including costs. Interest on this amount shall be calculated from May 15, 2003 at the legal rate in effect on that date (1.23%).[7] The total amount allowed for the Discrimination Action is **$81,822.07**, including costs. Interest on this amount shall be calculated from May 12, 2003 at the legal rate in effect on that date (1.23%). Bally is, therefore, or-

7. *See* 28 U.S.C. § 1961(a).

dered to pay Mogilevsky $149,971.24 plus accrued interest.

SO ORDERED.