CITY OF BOSTON & another[1] *vs.* MASSACHUSETTS
COMMISSION AGAINST DISCRIMINATION.

No. 94-P-666.

Suffolk. April 13, 1995. - September 13, 1995.

Present: ARMSTRONG, KASS, & JACOBS, JJ.

*Arbitration*, Collective bargaining. *Labor*, Arbitration, Collective bargaining, Damages. *Massachusetts Commission Against Discrimination. Anti-Discrimination Law*, Arbitration, Race, Termination of employment. *Employment*, Discrimination, Termination. *Interest.*

Discussion of the weight to be accorded to an arbitration decision under a collective bargaining agreement in a later proceeding before the Massachusetts Commission Against Discrimination. [238-240]

At a hearing on a complaint of racial discrimination before the Massachusetts Commission Against Discrimination, the commissioner erred in refusing at least to examine a labor arbitration decision arising from the same factual situation, however the error did not require reversal where the arbitration decision was not relevant to the issue of racial discrimination under consideration by the commissioner. [240-241]

In a proceeding before the Massachusetts Commission Against Discrimination, there was substantial evidence to support the commissioner's conclusion that the defendant employer would not have discharged the plaintiff but for his race, and the employer could not justify its action on the later discovered fact that the employee had falsified his educational record and was thus not qualified for the position from which he was discharged. [241-242]

An employer could not raise an issue for the first time in Superior Court in the course of proceedings under G. L. c. 30A to review a decision of the Massachusetts Commission Against Discrimination, where the issue had not been raised before the administrative agency. [242]

Evidence at a hearing before a commissioner of the Massachusetts Commission Against Discrimination was sufficient to support the commissioner's conclusion that the employer's proffered reasons for discharging the employee were a pretext and that the termination was an act of racial discrimination. [242-244]

A party to administrative proceedings before the Massachusetts Commission Against Discrimination did not demonstrate any prejudice from the more than five-year delay in adjudication of the matter. [244-245]

[1]Sheriff of Suffolk County.

Where, in a proceeding before the Massachusetts Commission Against Discrimination, there was no express statutory authorization for the payment of interest on an award under G. L. c. 151B against the Commonwealth or its instrumentalities, such an award was vacated. [245-246]


CIVIL ACTIONS commenced in the Superior Court Department on February 18, 1992.

The cases were heard by *Patti B. Saris*, J.

*John M. Townsend* for the plaintiffs.

*George P. Napolitano* for the defendant.

KASS, J. On August 27, 1985, Larry Brooks, a provisional correction officer at the Deer Island house of correction, and another guard, Paul Delaney, were involved in an altercation with several prisoners. In consequence of the affray, Brooks, who is black, was fired, and Delaney, who is white, received a commendation. Brooks complained to the Massachusetts Commission Against Discrimination (MCAD) that his discharge was racially motivated. In the employer's[2] appeal from a determination by the MCAD that the termination of Brooks's employment was, indeed, an act of unlawful racial discrimination, the issue of interest concerns the refusal of the MCAD to give any weight at all to the decision of an arbitrator before whom the unlawful discrimination issue had been placed. There are some other issues as well.

The MCAD ordered that the employer: (1) cease and desist from its unlawfully discriminatory practices; (2) pay Brooks compensatory damages; (3) reinstate him; and (4) initiate a training program in human relations and civil rights. Upon review of the MCAD decision under G. L. c. 30A, § 14, a judge of the Superior Court affirmed the finding of racially motivated discharge and much of the substance of the MCAD's orders.

---

[2]At the time of the commencement of proceedings before the MCAD, the employer was the penal department of the city of Boston. During the pendency of the proceedings, the responsibility of the city for the Deer Island house of correction devolved upon the sheriff of Suffolk County. Both the city and the sheriff are parties to the appeal.

For purposes of considering the appeal, the detailed findings of fact made by the single commissioner who conducted the MCAD hearing and restated by the reviewing Superior Court judge may be distilled. Brooks's duty post as a correction officer on August 27, 1985, was in the east wing of the Deer Island house of correction. While returning from a stop in a central administrative area, Brooks had word from an inmate of trouble in the west wing. Together with Delaney, whose assistance Brooks sought, he went to the west wing to see what was up. There seemed to have been some sort of disturbance, in which a prisoner named Edward Reid was a combatant. Brooks tried to escort Reid, whose blood was still up, into a segregation unit in the east wing. Another prisoner, Michael Burns, warned Brooks to take his "fuckin' hand off him [Reid]," and placed himself between Brooks and Reid. Delaney arrived on the scene, and now both Reid and Burns were being steered to the segregation unit. Burns announced, "We're not going in. Let's fuck these cops up." Reid took up the invitation, and he and Burns sailed into the guards, to the pleasure of a now raucous crowd of inmates. Delaney sounded the alarm and help sufficient to control the incipient riot arrived. For their part, officers Brooks and Delaney, while dealing with Reid and Burns, roughed them up enough so both inmates required medical attention.

Each of the two officers was charged with leaving his post without authority, transferring an inmate without authority, and using excessive force against an inmate. There was a disciplinary hearing, following which the penal commissioner of Boston determined that Brooks had, indeed, undertaken to transfer an inmate without authority and had used excessive force. Brooks's professional conduct, the commissioner said, had been deplorable, and he was discharged immediately. As to Delaney, the commissioner exonerated and commended him on the grounds that Delaney had acted on Brooks's alarm and had appropriately assisted a fellow officer in need of aid.

Brooks invoked his right under the correction officers' collective bargaining agreement to grievance arbitration, and

was represented by his union in that process. In the arbitration, Brooks claimed that he had been fired without just cause and that he had been discriminated against by reason of his race. Following seven days of hearings, the arbitrator filed a detailed, fifteen-page decision in favor of the employer. Brooks, the arbitrator found, had violated regulations in failing to notify his supervisor immediately when he had word of trouble, and, by proceeding on his own, had caused a minor incident in the prison to escalate. That lapse on the part of Brooks, the arbitrator determined, was just cause for firing him, and it was not necessary to sort out whether the force he had used against Reid or Burns was excessive. As to the claim of race discrimination, the arbitrator concluded it had not been made out because Delaney, the white officer, had not been informed by Brooks about what was going on; that "Officer Delaney was placed in the position of backing up a fellow [o]fficer who was taking independent action without sharing any information as to why."

Thus disappointed by the arbitration proceedings, Brooks pursued his remedies before the MCAD, with which he had timely filed a charge of race discrimination in violation of G. L. c. 151B, § 4(1), and 42 U.S.C. §§ 2000e et seq. (1988). The MCAD adopted the findings of the single commissioner who conducted the hearings. He had found that white correction officers at Deer Island "regularly engage in the practice of transferring inmates without first getting supervisory approval" and that "Brooks was singled out in an unusually harsh and unjust manner. . . . I am compelled to conclude that the [employer's] articulated reason for terminating the Complainant . . . is pretextual." The investigation of Brooks's role in the incident of August 27, the commissioner found, was "kangaroo justice" directed to the object of firing Brooks, an end desired by Mark Kepple, deputy superintendent of the facility. There was testimony, which the commissioner credited, that Kepple had voiced hostility to African-American correction officers; by way of raw example, Kepple had said on one occasion, "fuck the niggers."

1. *Weight to be ascribed to the arbitrator's decision.* When the employer sought to introduce the arbitrator's decision as evidence, the commissioner declined to receive it. Loftily, the commissioner said: "[T]he MCAD is the competent state agency to hear discrimination charges, and this is the forum in which they are heard; and that the weight that I would lend to somebody else's hearing on this would be no weight at all." Had the commissioner troubled to look at the arbitrator's decision, he would have found, at the least, a careful description of the physical setting in which the disturbance had occurred and the manner in which it developed into something potentially dangerous. To have waved the decision off was, as the trial judge observed, arbitrary and not in accord with law.

To be sure, submission to arbitration under a collective bargaining agreement does not give preclusive effect to the arbitral decision in a later statutory discrimination action brought before a court or specialized agency. See *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 54 (1974); *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. 728, 744-745 (1981); *McDonald v. West Branch*, 466 U.S. 284, 292 & n.13 (1984); *Carr v. Transgas, Inc.*, 35 Mass. App. Ct. 581, 583 (1993), and cases cited. Compare *Gilmer v. Interstate/ Johnson Lane Corp.*, 500 U.S. 20, 35 (1991), in which the Court held that the arbitral right would be both exclusive and preclusive in those instances where the parties had contracted to arbitrate statutory claims. A prohibition against discrimination in a collective bargaining contract (as in the instant case) does not constitute a referral of statutory claims to arbitration. *Barrentine v. Arkansas-Best Freight Sys., Inc.*, 450 U.S. at 744 n.23. Compare *Rooney v. Yarmouth*, 410 Mass. 485, 491-494 (1991).

The dominant idea underlying the *Gardner-Denver* line of cases is that when Congress accords a person an independent statutory right (or in the State context, when the Legislature accords such a right), that public right (subject to the exception later created in *Gilmer*) is independent and paramount to the privately arrived at collective bargaining agreement.

See *Alexander* v. *Gardner-Denver Co.*, 415 U.S. at 49-54. Indeed, the prior arbitration decision is not even one to which an agency or court that hears a statutory discrimination claim must ascribe deference or special weight. *Id.* at 60 & n.21. *McDonald* v. *West Branch*, 466 U.S. at 292 n.13. *Wilmington* v. *J.I. Case Co.*, 793 F.2d 909, 919 (8th Cir. 1986). *McAlester* v. *United Air Lines, Inc.*, 851 F.2d 1249, 1259 n.7 (10th Cir. 1988).

To say that the arbitral decision does not have special weight, however, is not to say that it is irrelevant. Since *Gardner-Denver*, the governing principle has been that the forum adjudicating a statutory claim of discrimination may receive an arbitration decision in evidence and accord it the weight that seems appropriate. Obviously, the adjudicator of the statutory claim cannot consider what weight, if any, to give an arbitral decision unless it at least examines that decision. If the arbitration has been conducted fairly and thoroughly by a competent arbitrator, the court or agency hearing the statutory claim will wish to give the arbitration decision rather more weight than if the arbitration has been loose, cursory, and conclusory. See *Alexander* v. *Gardner-Denver Co.*, 415 U.S. at 60 n.21;[3] *McDonald* v. *West Branch*, 466 U.S. at 292-293 n.13. Compare *Wilmington* v. *J.I. Case Co.*, 793 F.2d at 919 (refusal to admit text of arbitrator's decision was not an abuse of discretion); *McAlester*

---

[3] The text of n.21 in the *Gardner-Denver* case is instructive: "We adopt no standards as to the weight to be accorded an arbitral decision, since this must be determined in the court's discretion with regard to the facts and circumstances of each case. Relevant factors include the existence of provisions in the collective bargaining agreement that conform substantially with Title VII, the degree of procedural fairness in the arbitral forum, adequacy of the record with respect to the issue of discrimination, and the special competence of particular arbitrators. Where an arbitral determination gives full consideration to an employee's Title VII rights, a court may properly accord it great weight. This is especially true where the issue is solely one of fact, specifically addressed by the parties and decided by the arbitrator on the basis of an adequate record. But courts should ever be mindful that Congress, in enacting Title VII, thought it necessary to provide a judicial forum for the ultimate resolution of discriminatory employment claims. It is the duty of courts to assure the full availability of this forum."

v. *United Air Lines, Inc.*, 851 F.2d at 1259 n.7 (admission in evidence of an arbitrator's decision discretionary, not mandatory). To the case law we may add the thought that the findings and decision-making of a neutral arbiter to whom the parties have freely submitted their dispute is entitled to examination by an agency or court, even if it may turn out upon scrutiny that the arbitral work product is not of much help to the finder on the statutory claim.

It was error on the part of the MCAD to ignore, i.e., not even to examine, the arbitration decision, but it was not an error warranting reversal. Although the arbitration hearing was fair and thorough, and the arbitrator's decision was craftsmanlike, the arbitrator dealt only lightly with the race discrimination issue. He was satisfied that there was just cause to discharge Brooks and did not inquire, as the MCAD later did, into an atmosphere of racial bias among some supervisors at Deer Island. The arbitrator saw reason to deal differently with the white Delaney and stopped there on the issue of race discrimination. While the arbitrator's decision could, therefore, have assisted the MCAD commissioner, particularly in getting the lay of the land, it would have been of distinctly lesser assistance on the question of race discrimination.

Further, the MCAD commissioner took as established by the employer that there was cause to fire Brooks. The next question, under the analysis prescribed by the *McDonnell Douglas*, *Burdine*, and *Price-Waterhouse* trilogy,[4] was whether the city's ostensibly plausible reason for firing Brooks was a pretext concealing the real, racially motivated reason. That question the MCAD proceeded to explore and the arbitration decision, with its focus on violation of the rule book, would have had negligible bearing on the answer; i.e.,

---

[4]See *McDonnell Douglas Corp.* v. *Green*, 411 U.S. 792, 802-805 (1973); *Texas Dept. of Community Affairs* v. *Burdine*, 450 U.S. 248, 252-253 (1981); *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 252 (1989). For application of this analysis in Massachusetts cases, see, e.g., *Wheelock College* v. *Massachusetts Commn. Against Discrimination*, 371 Mass. 130, 138-139 (1976); *Johansen* v. *NCR Comten, Inc.*, 30 Mass. App. Ct. 294, 296-301 (1991).

it would have had no weight under the *Gardner-Denver* criteria.

2. *Substantial evidence of unlawful discrimination.* We turn to the question whether there was substantial evidence[5] for the MCAD's conclusion that the city would not have discharged Brooks but for his race. See *McKenzie* v. *Brigham & Women's Hosp.*, 405 Mass. 432, 434-435 (1989), and *Harrison* v. *Boston Financial Data Servs., Inc.*, 37 Mass. App. Ct. 133, 136-137 (1994), listing the essential elements of a prima facie case of unlawful discrimination.

a. *Job qualification.* The city's first line of defense here is that it developed during the course of the MCAD hearing that Brooks had falsified his job application by representing that he had graduated from Enterprise High School in Enterprise, Alabama, when, in fact, he had not. Therefore, the city reasons, Brooks was not qualified for the job from which he was removed and there could not be substantial evidence of unlawful discharge from a job he could not hold in any event. The city's difficulty is two-fold. First, Brooks's educational qualifications were not the basis of his discharge. The basis for discharge must be one which is known to the employer at the time of termination. *Price Waterhouse* v. *Hopkins*, 490 U.S. 228, 252 (1989) (an employer may not prevail "by offering a legitimate and sufficient reason for its decision if that reason did not motivate it at the time of the decision"). This is because the antidiscrimination statutes have a prophylactic purpose beyond the particular employee concerned. See *McKennon* v. *Nashville Banner Publishing Co.*, 115 S. Ct. 879, 884-885 (1995); Gudel, Beyond Causation: The Interpretation of Action and the Mixed Motives Problem in Employment Discrimination Law, 70 Tex. L. Rev. 17, 97-98 (1991). If, for example, racial discriminaton was the reason for terminating employment, the employer may not be absolved of consequences for that unlawful act by later discovery of some other reason for firing the employee. See

---

[5]"[S]uch evidence as a reasonable mind might accept as adequate to support a conclusion." G. L. c. 30A, § 1(6), as inserted by St. 1954, c. 681, § 1.

*Smith* v. *General Scanning, Inc.*, 876 F.2d 1315, 1319 (7th Cir. 1989), in which the court considered a résumé fraud discovered after the complainant had been discharged irrelevant to whether the employer violated the protective statute at the time of discharge. See also *Trustees of Forbes Library* v. *Labor Relations Commn.*, 384 Mass. 559, 566-567 n.5 (1981). Contrast cases involving more egregious falsification: *Summers* v. *State Farm Mut. Auto. Ins. Co.*, 864 F.2d 700, 708 (10th Cir. 1988); *Washington* v. *Lake County*, 969 F.2d 250, 251 (7th Cir. 1992). See, however, *McKennon* v. *Nashville Banner Publishing Co.*, *supra* at 879, in which the court held that, although after acquired knowledge of solid grounds for discharge may not justify a discriminatory discharge, the employer may base a future discharge on the recently acquired knowledge. As a general rule in such cases, the employee could not have reinstatement as a remedy but is limited to damages between the time of unlawful discharge and the time the employer might fire the employee on the basis of this newly discovered reason.

The city's second difficulty on the matter of Brooks's qualifications is that the issue was not raised before the MCAD. Failure to follow regulations and excessive force were the grounds for discharge pressed before the MCAD. The city inquired into Brooks's misstatement on his job application to attack his credibility as a witness. It did not argue to the MCAD that the misstatement constituted a ground for termination. That position the city took for the first time in the Superior Court proceedings. A party may not, in the course of a c. 30A review, introduce an issue not raised before the administrative agency. *Massachusetts Elec. Co.* v. *Massachusetts Commn. Against Discrimination*, 375 Mass. 160, 172 (1978), and cases cited.

b. *Job performance.* The city argues that, as there was substantial evidence of multiple violation of regulations by Brooks on the fatal day of August 27, 1985, he failed to make out a case of adequate job performance. There was no evidence, however, that Brooks had been disciplined by his supervisors at Deer Island during the year and some months

that he had worked there. There was evidence that other employees, who were not discharged, had violated the rule against placing a prisoner in a segregation unit or moving a prisoner from one wing to the other without prior supervisory approval. That constituted part of the evidentiary ground for the MCAD's ultimate conclusion that this reason was not the real one.

As to excessive force, there was evidence that inmate Reid, who had been handsomely roughed up, received his drubbing from Delaney. There was evidence that inmates Burns and Reid were the first to turn violent. A third correction officer, John McGrath, had testified that Brooks was not doing "anything differently from Delaney," during the fracas. The testimony of Officer McGrath and another officer supported the inference that no white officer involved in a similar fight with an inmate had been fired. While the evidence did not compel a finding that, in relation to Delaney, Brooks had been unfairly marked as having used excessive force, it was sufficient to support a rational finding by the MCAD to that effect.

c. *"Pretextual" nature of the reasons offered by the city for discharging Brooks.*There was a basis in the testimony of Dennis Fogg, a deputy superintendent, for a finding that Deputy Superintendent Kepple had a bias against African-Americans, and that Kepple thought the facility had been padded with black employees by the former penal commissioner of Boston, who was black. The MCAD considered statistics that during 1987, eighteen of twenty-one correction officers who were fired were black. In the absence of any consideration for the reasons underlying those discharges, the figures are not very instructive. The statistical evidence may be inconclusive but an administrative agency has broader scope than a court concerning the evidence it will receive, i.e., it is not bound by the same strict rules. See *College-Town Div. of Interco, Inc.* v. *Massachusetts Commn. Against Discrimination,* 400 Mass. 156, 169 (1987). Properly, the Superior Court judge sitting in review, deferred to the resolution by the MCAD commissioner of questions of credibility and the weight to be given evidence and the ulti-

mate finding that racial bias, not violations of regulations or excessive force, had triggered the discharge of Brooks. See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. 221, 224 (1978).

3. *Consequence of the unduly protracted administrative proceedings.* It took the MCAD one year and ten months to bring the Brooks complaint to a hearing. Hearings, inexplicably, spanned a full year. It took another three years for the commissioner who had conducted the hearings to produce a decision. All told, therefore, adjudication of the matter consumed five years and ten months.[6] Inordinate delay of this sort undermines confidence in the tribunal. When a hearing is so spread out, the fabric of the story of the case loses shape and the impressions of witnesses lose sharpness. Adding three years of delay to come to the point of decision aggravates the staleness of the evidence and the sense of unease about whether the tribunal has a grip on the evidence. In the meantime, the contesting parties are subject to distressing uncertainty.

The employer argues that the MCAD decision should be set aside because it came so slowly. The items of prejudice arising from delay to which the employer adverts are that: (1) the dated nature of the evidence encumbers appeal; (2) the sheriff of Suffolk County, as successor to the city, is being required to comply with orders (to cease and desist and to initiate training programs) that have nothing to do with his administration of the Deer Island facility; and (3) the passage of time produces inordinate interest costs. The first of those three grounds is little but an assertion. The employer has pointed to nothing lost in the record that has handicapped it in the process of c. 30A review or this further appeal. As to the second and third points, relief is possible short of vacating the entire MCAD order. There is a third party

---

[6]Proceedings before the MCAD of Dickensian length are not, alas, without precedent. See *Smith College* v. *Massachusetts Commn. Against Discrimination*, 376 Mass. at 222, in which the court deplored the "lethargic course" of the proceedings in that case.

with an interest in that order, after all, who did not contribute to the delay, namely, Officer Brooks.

Dealing with the consequence of delay in this case is made easier because the MCAD no longer presses reinstatement of Brooks to his job (compare *Smith College* v. *Massachusetts Commn. Against Discrimination,* 376 Mass. at 222-223) and the portion of the MCAD order requiring the employer to commence a training program in human relations was not included in the judgment of the Superior Court. The judge remanded the training program order to the MCAD "in light of the transfer of functions from the City to the Sheriff." In the record before us, the trail thereafter turns cold on the training program issue, and we take it as dropped by the MCAD.

To Brooks, the MCAD had ordered compensatory damages of $36,828.92 in back pay and $50,000 on account of emotional distress. The order stated there was to be interest thereon. Compensation orders by the MCAD may include interest. *New York & Mass. Motor Serv., Inc.* v. *Massachusetts Commn. Against Discrimination,* 401 Mass. 566, 583 (1988). *Conway* v. *Electro Switch Corp.,* 402 Mass. 385, 390-391 (1988). Interest is awarded to compensate the injured party for the loss of use or unlawful detention of money to which that party was entitled. *Id.* at 390. *McEvoy Travel Bureau, Inc.* v. *Norton Co.,* 408 Mass. 704, 717 (1990). *Makino, U.S.A., Inc.* v. *Metlife Capital Credit Corp.,* 25 Mass. App. Ct. 302, 320-321 (1988).

There is force to the employer's argument that it is inequitable to impose a burden of interest for a period of detention of money to which the employer did not contribute. We need not resolve that question, however, because interest does not, in any event, lie against the Commonwealth or its instrumentalities (as here) in the absence of express statutory authorization. *Gurley* v. *Commonwealth,* 363 Mass. 595, 600 (1973). *Onofrio* v. *Department of Mental Health,* 411 Mass. 657, 659 (1992). There is no express statutory authorization for the payment of interest on awards under G. L. c. 151B against the Commonwealth or its instrumentalities. Compare

*School Comm. of Newton* v. *Labor Relations Commn.*, 388 Mass. 557, 579 (1983). Compare G. L. c. 231, § 6B (no express provision for payment of interest by the Commonwealth), with § 6C (express provision for payment of interest by the Commonwealth).

The judgment of the Superior Court denying the petition for review is modified to require that the interest, reinstatement, cease and desist, and training components be struck from the MCAD order. Insofar as the Superior Court judgment affirms the compensation elements of the MCAD order, i.e., back pay of $36,828.92 and $50,000 for emotional distress, it is affirmed.

*So ordered.*